Johnson, J.
Three objections are made to the judgment in this case:
First. That the board of improvements should not only have recommended to the council the improvement, but that an assessment would be necessary to pay for the same, and the proper amount to be assessed. That such report, that an assessment would be necessary and the proper amount, is as much a condition precedent, as a report in favor of such improvement.
Second. That the city extended the time for the performance of the work from December 1, 1869, to August 1, 1870, without authority of law.
Third. That the contract was obtained from the city by fraud practiced on the city council and on the property owners.
I. "Was it necessary to the validity of the action of the city council that the board of improvements should have recommended not only the improvement, but that an assessment would be required to pay for the same, and the amount thereof?
In Welker v. Potter, 18 Ohio St. 85, it was held: “ That the adoption of the resolution declaring the improvements necessary, etc., were conditions precedent to the exercise of authority to pass a valid ordinance or make an assessment on adjoining property to pay for them;” and it is claimed, for the same reasons, that the board of improvements must report, “ that an. assessment will be required to pay for the same and the proper amount to be assessed; ” and that such report is as much a condition precedent as the recommendation of the improvement itself.
*126 'We do not concur in this view. The statute (2 S. & O. 1526, sec. 105) provides that, “in all cities of the first-class, where there shall be a board of city improvements, no improvement or repair in relation to streets, sewers, or bridges shall be ordered or directed by the city council, except on the report and recommendation of said board. All petitions from owners of property in relation to such improvements shall be presented to such board, who shall report from time to time to the city council when any such improvement is necessary or proper, and when an assessment is required, and the proper amount to be assessed ; and the city council shall take such action thereon as may be deemed proper.”
The statute does not vest in the board of improvements the power to determine when an improvement shall be paid for by an assessment. The mode of payment must either be determined by the law, or, when not, by the council.
If no assessment is required, as if the improvement is to be paid for out of the general fund, then no such report is necessary or required.
In cases where it is required, the amount must be ascertained before an assessment can bo reported. Until the contract is awarded, the amount can not be ascertained. Before that it would be an estimate.
The statute says no improvement or repair shall be ordered, except on the report and recommendation of the board of improvements; but it does not say it shall not be ordered, except on a report that an assessment would be required, and the proper amount required. These duties of the board are not conditions precedent, like the report and recommendation of the improvement.
II. It is claimed that in law this contract expired December 1, 1869, the time the work was to have been completed; that prior to that time no work had been done under it, and that the action of the city council on the 29th of November, 1869, in extending the time of performance to August 1,1870, was in fact equivalent to making a new. contract, and required, under sections 97 and 98 of the mu *127 nicipal code, the assent of a majority of all the members elected to grant such extension.
Section 97, aforesaid, provides that “all ordinances and resolutions, and all by-laws for the government of the council, shall require for their passage or adoption the concurrence of a majority of ail the members elected.”
If, therefore, the action of the city council on the 29th of November comes within the purview of this section, it was illegal, as but seven out of sixteen members voted in its favor.
To determine this we must look to the record to see what the facts were, and what action, if any, was necessary to warrant the contractors in taking further time to complete the job.
The record discloses the fact that prior to November 29th the contractors had rented a dock, and made contracts for the delivery of stone from Buffalo, and had delivered a small quantity ready for use in paving, but were unable to get possession of the street to grade and pave, because one Welker, who had the contract for bringing the street to grade, had not completed his work, and in fact did not do so until about the last of April, 1870. In this condition of things, the contractors sent a petition to council, representing that they had all the material contracted for, and a portion delivered, and that they were ready and anxious to proceed whenever the street was delivered into their hands, but that the grading was let in a separate contract to other parties, and was not completed. Eor these reasons they asked an extension of time. Their request was granted by a vote of seven to five, there being only twelve out of sixteen members present.
It does not appear there was any want of diligence by the contractors, or that they were otherwise in default; on the contrary, it clearly appears that the delay was one for which they were not responsible.
The contract provided that in the event of failure of the contractors to perform their covenants, the city had the option to declare it forfeited, and re-let the work, or to em *128 ploy others to complete the work, and charge them with the difference.
There was no forfeiture if the work was not done within the time, except at the option of the city.
If it did not choose to exercise that option, the contractors might continue their work, and the right to exercise such option depended on the contractors being in default.
In this case the delay was not theirs, and hence no cause for forfeiture existed.
The municipal code took effect July 1, 1869.
By caution 725 all rights and liabilities, either in favor of or against the city, which existed when the code took effect, were expressly saved ; so that if this was a subsisting valid contract July 1, 1869, and was not thereafter forfeited, it continued to be such valid obligation without the assent of the council to the extentions of time.
It was an act of prudence to obtain such consent, but, under the circumstances, was unnecessary.
But, admitting that the contractors were in default, it was within the discretion of the city authorities to declare a forfeiture, and re-let the work, or to allow them to complete it.
In the exercise of that discretion they acted as the legal representatives of the public, including these plaintiffs in error. By their action, in good faith and within the scope of their authority — and there is no impeachment of their conduct in this case — the tax-payer is bound.
Time is. not of the essence of the contract, unless made so by its terms. Had the council taken no action at all, but simply permitted the work to go on to completion, and then accepted it, as they did in this instance, no one would claim the work was not performed under the contract, and it would be grossly inequitable to permit the city, after such acts of acquiescence, to attempt to defeat a recovery on the ground that the work was done after the time stipulated in the written contract.
All the resolutions and ordinances required had been passed, and the contract made prior to the municipal code. *129 The duty only remained to see that it was properly executed. This duty devolved on the board of city improvements, by chapter 45 of that code, under control of the council perhaps.
There is no intimation that the city authorities have not faithfully performed that duty, and if we admit, as claimed, that the work should have been done by December 1,1869, still this was a default that might in the discretion of the proper officers be waived, if by so doing the public interest was thereby promoted, without an ordinance or resolution of the council; and we are of opinion that allowing the work to go on to completion, and then accepting and paying for it under the contract, would, constitute such waiver.
III. This brings us to the most important question involved, i. e., have the contractors who have performed the work, and received payment on this assessment, a right to recover the assessment, or are they barred from such recovery by reason of the facts set up in the answer as to the fraudulent combination among contractors ?
It is claimed that the maxim “ ex turpi causa non oritur actio ” forbids such recovery :
That said contract was obtained through a conspiracy, combination, and collusion between the principal grading and paving contractors in the city of Toledo, including Brophy & Casey, not to bid against each other, or to compete for any of the June, 1869, letting of contracts by the-city of Toledo, but to divide the work.
Was'there such a fraudulent combination as would bar a recovery under the circumstances disclosed ?
We have examined this evidence with much care. It is-somewhat conflicting. That there was an understanding-among leading contractors with reference to the large contracts to be let is clear, but whether the object and tenor of that understanding was such as in the eye of the law made the bid of these parties a fraudulent one, is by no-means clear in the light of the whole evidence. At most, the proofs on this point are not so convincing as will warrant. *130 a reviewing court in reversing on the ground that the, findings of the district court are clearly against the weight of the evidence. That court saw the witnesses, heard them subjected by able counsel to the ordeal of cross-examination, aud its conclusions upon questions of fact under such favorable opportunities for carefully weighing the evidence will not lightly be disturbed.
Here we might stop, but the importance of the question and-the zeal aud ability with which counsel have pressed their view of it, justifies and perhaps requires us to examine more at large the law of the case.
If we concede that there existed the alleged combination,, it by no means follows that they are absolutely barred from a recovery in this action for either tHe whole of this assessment, or such part thereof as corresponds with a fair and reasonable value of the work.
This is an action to recover the assessment turned over 'by the city in payment for the work, and not on the contract alleged to have been fraudulently obtained.
The city authorities were satisfied with the bid, and .awarded the contract. It is not claimed that they were a party to this fraudulent combination, nor that the contract was not faithfully performed in every respect, nor does it •clearly appear that the price agreed to be paid was not at the time reasonable and fair, in view of the mode of payment.
The work was done, as we may suppose, under the direct supervision of the board of improvements, and was accepted and paid for in full compliance with the terms of the contract. More than this, on the 15th of May, 1870, .-and before the work was fairly begun, the plaintiffs in ■error, desiring to be relieved from the burden here complained of, appealed to the council, by a petition, charging that this contract was obtained in fraud of their rights, and protesting against the prosecution of the work, at the same time giving notice that they would resist the-collection of the assessment. What special action the council took on this protest does not appear, but we may fairly presume *131 that, in the discharge of a sworn public duty, it was of opinion it was not well founded, or if it was, that it was for the public intérest to waive the right to stop the work, and insist on a performance by the contractors. Whatever may have been the motive, we know they permitted, and, for aught that appears, required the work to go on, and accepted and paid for it with full knowledge of the matters set up in this defense.
By the law of the land, the city authorities are made the representatives of the public interest. Within the scope of their authority, or where they are vested with discretionary powers, their acts in good faith are final. In contracts of this kind they are the agents of the tax-payers. If fraud had been practiced upon them in obtaining this contract, their duty was to take steps to redress the injury to the city. They could rescind this contract and recover damages for the fraud. The contractors were at their mercy. They were bound or loosed, as the council might determine, in view of the public interest. They could not take advantage of their own wrong and abandon the work, but must go on unless stopped.
If the city chose, it could compel performance. If, after knowledge of the fraud, the city elected to exact a performance, and accept the fruits of labor and money expended thereafter, and in all respects treated the contract as subsisting, both the contractor and the public, whose agents they were, are bound if the city authorities acted in good faith. The contract being voidable only at the option of the other party, and having been treated by the city, after notice of the fraud, as a valid contract, the performance exacted, the work accepted and paid for under it, we can not say it was a nullity, or that the contractors are not entitled to a fair compensation for their work. Were this an action against the city to recover the contract price of the work, it is clear that they could recover', on the ground of a. waiver of the fraud, and, after being notified of it, continuing the work. On the other hand, if, on receiving such no *132 tice, the city had refused to proceed, or to accept the work when completed, the case would have been different.
As between the parties, we have the case of an executed contract on both sides. As to the city, whatever it was required to do, was done after this notice and protest of the parties assessed.
The defendants knew of this alleged fraudulent combination on the 15th of May, 1870, if not sooner, and appealed to the council for relief, which the council did not grant, but went on with the work, it may be because they regarded the complaint as unfounded. Eor the failure of the council to act, the law gave the property owners an adequate remedy by injunction to restrain the prosecution of the work.
By sec. 159 of the municipal code, it is made the duty of the city solicitor to apply for an injunction to restrain the execution or performance of any contract “ which was procured by fraud; ” and if he fail, upon the request of any tax-payer to do so, then, by section 160, it shall be lawful for such tax-payer to institute a suit in his own name on behalf of, the corporation.
On the 15th of May the property owners might have enjoined this work, if the facts were as they claim, while yet the larger part remained to be done.
They chose to rely on their protest, and to allow the contractors to expend large sums in the completion of the contract, and to permit the council to accept the work and pay for the same, and for themselves have received and enjoy whatever benefits accrued to them as abutting lot owners.
Under these circumstances, we are of opinion that, in this action to recover the assessment, the property owners can not claim exemption for a fair price for this work.
If the property holders have sustained an injury by reason of the fraudulent inceptiou of the contract, the recovery in such case should be limited to a reasonable price.
This conclusion is in accord with the equitable provisions' of section 550 of the municipal code, which provides that when there is any irregularity or defect in the assessment, *133 the court may render judgment for the amount properly chargeable.
If we were to hold otherwise, we would have an anomalous condition of things in the administration of municipal government — a condition in which each individual could refuse to be bound by the judgment and discretion of the lawful authorities in all matters of local government involving public improvement and the performance of contracts, and resist the payment of the expenses,' on the ground that, in his judgment, the corporation should not have incurred the obligation.
Courts should always be vigilant to restrain the abuses of corporate power, yet when the authorities of a municipal corporation are acting within the scope of their authority, and in good faith, they are the legally constituted agent of all the citizens to the extent of their authority, and the courts should be slow to intervene.
The letting of contracts for improvements in a municipal corporation, and the manner in which such contracts shall be executed, are within the scope of their authority.
In a case like the present, when, with a full knowledge of all the facts, they have deemed it for the public interest to treat the contract as a subsisting one, notwithstanding the misconduct of the contractors, and have exacted a performance, accepted and paid, for the work, it would be subversive of orderly self-government to now allow the parties assessed to reopen the question, to enable them to enjoy all the fruits of the improvement, without paying a fair and reasonable part of the assessment.^
We think the action of the city authorities, in treating this contract as a continuing and binding obligation, in supervising and accepting, the work, and in the delivery of this assessment in payment thereof, after knowledge of this defense, was the exercise of a discretion vested in them, binding on the public, whose agents they were; and that by reason thereof, and because the plaintiffs in error failed to enjoin the prosecution of the work, they are now estopped *134 from interposing this defense as a bar to a recovery for any amount.
If, however, such defense is made out, and that actual injury is shown to have;resulted, the amount of recovery should be limited to a fair and reasonable value for the work. The city authorities had no power to waive the damages accruing to the parties assessed by reason of the fraudulent acts of the plaintiffs.
No ^uch damages, however, are shown in this case to wai’rant an abatement, nor was this defense interposed for that purpose, but to defeat any recovery.

Judgment affirmed.